**Ronda COBB, Plaintiff,**

v.

**UNITED STATES MERCHANT MARINE ACADEMY, U.S. Secretary of Transportation and the Department of Naval Science at the United States Merchant Marine Academy, Defendants.**

**No. CV 83–4271.**

United States District Court,
E.D. New York.

Sept. 11, 1984.

Carol Eve Casher, Port Washington, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty. by Thomas B. Roberts, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action for employment discrimination brought by a female Merchant Marine Academy cadet who was denied a commission in the U.S. Naval Reserve because she was pregnant at the time she applied. Defendants have moved for summary judgment.

In May 1983 the Naval Reserve denied plaintiff a commission on the ground that plaintiff was pregnant at the time, and also on the ground that plaintiff has a history of severe dysmenorrhea (menstrual pain). Plaintiff contends that this denial of a commission constituted illegal gender-based discrimination insofar as it was based upon pregnancy, and that the allegation that plaintiff suffers from severe dysmenorrhea is unsubstantiated. Since plaintiff is no longer pregnant, plaintiff underwent an induction physical on May 14, 1984. The Navy Medical Command, however, has requested that plaintiff undergo a second gynecological exam, due to plaintiff's past medical history. On August 17, 1984, plaintiff's attorney informed defendants' attorney that plaintiff would agree to a second exam, upon certain conditions. On August 22, 1984, plaintiff's attorney informed the Court that plaintiff had decided not to submit to a second examination, due

to an inability to reach agreement with the government on the conditions under which the exam take place.

■ Plaintiff's claim is based in part upon 42 U.S.C. Section 2000d, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Plaintiff can have no relief under this provision. First, the provision does not deal with gender-based discrimination. Second, the provision deals with programs and activities receiving Federal financial assistance, rather than with agencies of the government itself, such as the U.S. Naval Reserve or Merchant Marine Academy. *Soberal-Perez v. Heckler*, 717 F.2d 36 (2d Cir.1983).

■ Plaintiff's claim is also based in part upon 42 U.S.C. Section 2000e–16, which protects federal employees against discrimination based on sex. Under 42 U.S.C. Section 2000e(k), the term "on the basis of sex" is defined to include "on the basis of pregnancy, childbirth, or related medical conditions ..." However, 42 U.S.C. Section 2000e–16 does not apply to uniformed members of the armed forces. *Gonzalez v. Department of Army*, 718 F.2d 926 (9th Cir.1983). Plaintiff, however, argues that:

In essence, the [Merchant Marine] Academy has a duality of purpose and its graduates depart with a "hybrid" career orientation. Their primary goal (and that of the Academy) is to pursue meaningful careers in the top echelons of the maritime industry. Their further motivation is to stand ready (during a six-year period) to assist in the defense of our nation during times of war or national emergency. Midshipmen are not "Navy" careerists (unlike their counterparts at the Naval Academy at Annapolis). Rather, they must fulfill certain requirements by serving a six-year stint in a special Merchant Marine branch of the Naval Reserve open only to graduates of the Academy. This Reserve status has a dual purpose: to provide for readiness in time of national crisis and to sharpen the skills of Academy graduates as they enter the private sector...

Plaintiff argues that this alleged "duality of purpose" renders 42 U.S.C. Section 2000e–16 applicable to Merchant Marine cadets applying to the Naval Reserve. Plaintiff relies upon *Hunter v. Stetson*, 444 F.Supp. 238 (E.D.N.Y.1977). There, plaintiff was a civilian technician performing certain functions for the New York Air National Guard, who was required to be a member of the Guard as a condition for his employment. Plaintiff alleged that his military rank in the Guard was reduced by a colonel who was plaintiff's superior in both military and civilian status, because plaintiff had assisted a fellow dual-status employee in bringing a discrimination suit against the colonel. The Court, in holding that a cause of action was stated under 42 U.S.C. Section 2000e–16, stated:

... I read the complaint as alleging improper action on the part of plaintiff's *civilian employers;* i.e., exploiting their dual status as plaintiff's military and civilian superiors to pervert the military decision-making process. And this was allegedly done with the intent of furthering goals in the realm of civilian employment: i.e. discouraging the processing of discrimination complaints.

. . . .

However, in the context of the peculiar factual situation presented here, I think that the complaint states a cause of action cognizable under Title VII. Plaintiff contends that the act which precipitated a reduction in his military rank ... was committed within the scope of his civilian employment, and that it is only by virtue of the fact that his superiors in the Guard wear two hats that they were able to mete out punishment in the form of a reduction in military rank. In other words decision-making in the military has allegedly been polluted by retaliatory motive with respect to the civilian sphere... Plaintiff further contends that the military disciplinary action has

had an impact on his civilian employment, an apparently tenable claim in view of the dual status of plaintiff with respect to the Guard.

*Id.* at 239–240.

■ The *Hunter* case is not on point. In *Hunter*, the plaintiff and defendant had a relationship which was at least in part civilian in nature. In the instant case, by contrast, plaintiff seeks to join the Naval Reserve in a purely military capacity. The fact that plaintiff's service in such a military capacity would be of benefit to her in the private sector in her relations with employers other than the Naval Reserve, is irrelevant. Consequently, we hold that the complaint does not state a cause of action against the Navy under 42 U.S.C. Section 2000e–16.

■ We further hold that the complaint does not state a cause of action against the Academy under 42 U.S.C. Section 2000e–16, as plaintiff was a mere student and not an "employee" of the Academy.

Plaintiff's complaint is based primarily upon the Fifth Amendment. In *Crawford v. Cushman*, 531 F.2d 1114 (2d Cir.1976), a Marine Corps regulation mandating the discharge of pregnant marines was held violative of the Due Process Clause of the Fifth Amendment, including the equal protection component thereof. The Court explained that it was irrational for the Marine Corps to discharge pregnant persons while not discharging other persons with temporary disabilities, that it was irrational to discharge all pregnant marines without an individualized determination of fitness, and that the regulation penalized the decision to bear a child by those marines whose mobility and readiness would not be reduced either during the months preceding birth or during their careers after birth.

■ In the instant case, the Naval Reserve denies a commission to all persons with temporary disabilities, and not just to pregnant persons. Consequently, the policy in question here is not under-inclusive in the manner in which the policy involved in *Crawford* was. Further, the commissioning of a pregnant person would inevitably lead to a serious risk of the government incurring expenses for sickpay, hospitalization, and disability. While it might not be rational to discharge all pregnant persons, it does not follow that it is irrational to refuse to commission pregnant persons in the first place. When a person has once been commissioned, that person has to a certain degree a legitimate expectancy that her services will continue. Such an expectancy may render it irrational to discharge all pregnant persons without individualized determinations of fitness. A person who has not yet been commissioned, by contrast, does not have a legitimate expectancy of being commissioned. Given the serious risk of incurring expenses involved in the commissioning of a pregnant person, it is rational to refuse to commission all pregnant persons. Further, a policy of refusing to commission all pregnant persons imposes less of a burden upon the right to procreate than does a policy of discharging all persons who become pregnant. A person who has not yet been commissioned has a variety of career options available to her, of which the Naval Reserve is only one. A person who is already in the service, by contrast, has committed herself to one particular career path, and so faces the threat of an enormous penalty if confronted with a regulation requiring that she be dismissed if she becomes pregnant.

We need not discuss the precise standards to be applied in evaluating a claim that a military policy constitutes illegal gender-based discrimination under the Due Process Clause of the Fifth Amendment. Suffice it to say that the Supreme Court, while warning that "[a]nnounced degrees of "deference" to legislative judgments, just as levels of "scrutiny" which this Court announces that it applies to particular classifications made by a legislative body, may all to readily become facile abstractions used to justify a result," *Rostker v. Goldberg*, 453 U.S. 57, 69–70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981), has stated that judicial deference to legislative authority (and hence presumably judicial deference to analogous executive authority as

well) "is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged." *Id.*, 453 U.S. 70, 101 S.Ct. 2655. In the instant case, we find that the Naval Reserve policy of not commissioning pregnant persons is not only rational, but is rational to such a degree as to make it unequivocally clear that the policy is not violative of the Fifth Amendment Due Process Clause.

For the above reasons, we conclude that the Navy did not act unconstitutionally in denying plaintiff a commission on the ground of her pregnancy.

■ With respect to plaintiff's claim that she is *currently* being denied a commission without substantial reason, we can only say that the Navy has made an entirely reasonable request that plaintiff undergo a second physical exam, which plaintiff has unreasonably refused to comply with. It is not for this Court or for plaintiff to dictate to the Navy regarding the procedures to be used in evaluating the medical condition of applicants for a commission.

We need not discuss the issue of whether a federal court has the power to order that a person be commissioned in the Naval Reserve.

Appended to this decision are a set of letters submitted by attorneys for both sides.

Defendants' motion for summary judgment is granted. The Clerk shall enter judgment in favor of defendants and against plaintiff, denying plaintiff all relief.

SO ORDERED.

## APPENDIX

BLODNICK SCHULTZ & ABRAMOWITZ, P.C.

August 9, 1984

Hon. Leonard Wexler
United States District Judge
1000 Hempstead Turnpike
Uniondale, New York 11553

RE: Ronda Cobb v U.S. Merchant Marine
Academy, et al
Index No. CV 83-4271 (EDNY)

Dear Judge Wexler:

We confirm that pursuant to recent discussions between our office and Assistant United States Attorney Thomas Roberts that our client, Ronda Cobb, has agreed to undergo a second gynecological examination at the office of Dr. E.F. Sternen in Euclid, Ohio on August 23, 1984 at 11:30 a.m. We further confirm defendants' commitment to grant plaintiff a commission in the Merchant Marine Naval Reserve upon her certification as "physically qualified" by Dr. Sternen, pursuant to the statements of Assistant United States Attorney Thomas Roberts at the oral argument held before Your Honor on July 16, 1984.

We further note that defendants have consented to plaintiff's request that a female representative of our law firm be present during the examination, and further that Mrs. Cobb will be fully reimbursed for out-of-pocket mileage expenses in connection with her trip to Euclid from Toledo for the examination.

Respectfully yours,
BLODNICK, SCHULTZ
& ABRAMOWITZ, P.C.
BY /s/Paul H. Levinson

PAUL H. LEVINSON

PHL:jf

cc: Thomas Roberts
Assistant United States Attorney
Mrs. Ronda Cobb

**U.S. Department of Justice**
*United States Attorney*
*Eastern District of New York*
August 13, 1984

Honorable Leonard Wexler
United States District Judge
U.S. Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Ronda Cobb v. U.S. Merchant Marine Academy et al.,

Civil Action No. CV–83–4271

Dear Judge Wexler:

This letter is written in response to plaintiff's August 9, 1984 letter to the court. Ms. Cobb will be treated like all other applicants for a commission in the Naval Reserve. We have repeatedly advised plaintiff's counsel of this position. Ms. Cobb is currently scheduled for an examination by a Dr. Sternen on August 23, 1984. Ms. Cobb will be commissioned only if the Naval Medical Command in Washington determines that she is physically qualified. Like all other applicants, Ms. Cobb may also apply to the Navy for expenses incurred in traveling to the examination. Finally, whether a witness may be present at the examination is a matter over which the Navy has no regulations. The decision is left to the physician. Dr. Sternen is a physician in private practice, and his office has advised the undersigned that he does not object to the presence of a witness.

> Respectfully yours,
> RAYMOND J. DEARIE
> United States Attorney
> By: /s/ Thomas B. Roberts
> THOMAS B. ROBERTS
> Assistant U.S. Attorney

cc: Paul Levinson
Blodnick Schultz & Abramowitz, P.C.
3111 New Hyde Park Road
Lake Success, N.Y. 11042

**BLODNICK, SCHULTZ & ABROMOWITZ, P.C.**

August 17, 1984

Thomas B. Roberts, Esq.
Assistant U.S. Attorney, EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Ronda Cobb v. United States Merchant Marine Academy, et al.
Civil Action No. CV–83–4271 (EDNY)
Our File # 7006–001

Dear Mr. Roberts:

We have received a written communication today from our client, Mrs. Ronda Cobb. In her letter dated August 11, 1984, she stated that her consent to attend and submit to the physical examination scheduled for August 23, 1984, in Euclid, Ohio at the office of Dr. E.F. Sternen is conditioned upon the following:

> "(1) If there is no commission application completed prior (to the examination),
> (2) If there are no travel orders which are required for reimbursement,
> (3) If the Navy pulls a sudden change in the format of the exam."

She further indicated that she would leave the exam "if the doctor hasn't any orders from the Navy stating *exactly* what's to be examined, if the exam is anything more than a regular gynecological exam," or if the representative of our firm scheduled to attend the examination with Mrs. Cobb is barred from any part of the examination.

Kindly confirm your understanding as to the specific procedures to be employed prior to and during the examination with regard to reimbursement for expenses and procedures to insure that Mrs. Cobb will obtain her commission if she is found to be medically qualified, including all forms and paper work that must be executed by our client.

Thank you for your anticipated courtesy and cooperation.

> Very truly yours,
> /s/ Carol Eve Casher
> CAROL EVE CASHER

CEC:dm
cc. Hon. Leonard D. Wexler
cc. Mrs. Ronda Cobb
(DELIVERIES BY EXPRESS MAIL)

**BLODNICK, SCHULTZ & ABRAMOWITZ, P.C.**

August 22, 1984

Hon. Leonard D. Wexler
United States District Judge
Federal Courthouse
1000 Hempstead Turnpike
Uniondale, New York 11553
RE: Ronda Cobb v. United States Merchant Marine Academy, et al.
Civil Action No. CV 83–4271 (EDNY)
Our File No. 7006–001

Dear Judge Wexler:

This morning I advised Assistant U.S. Attorney, Thomas Roberts, that our client, Mrs. Ronda Cobb, would not be attending the physical examination scheduled for August 23, 1984, in Euclid, Ohio, because the Government did not respond to our letter of August 17, 1984, which set forth the conditions upon which she would submit to the gyneological examination.

Respectfully yours,
BLODNICK, SCHULTZ
& ABRAMOWITZ, P.C.
BY /s/ Paul H. Levinson
Paul H. Levinson

PHL:jf

cc: Raymond J. Dearie
United States Attorney
Attn: Thomas Roberts
Mrs. Ronda Cobb

## U.S. Department of Justice
*United States Attorney*

*Eastern District of New York*

August 29, 1984

Honorable Leonard D. Wexler
United States District Judge
Federal Courthouse
1000 Hempstead Turnpike
Uniondale, New York 11553

Re: Ronda Cobb v. United States
Merchant Marine Academy, *et al.*
Civil Action No. CV–83–4271

Dear Judge Wexler:

This letter is written in response to plaintiff's attorney's letter to you dated August 22, 1984 and is intended to inform the court of the events leading up to plaintiff's decision to refuse to submit to a gynecological examination.

This suit involves a challenge to the physical requirements for being commissioned in the United States Naval Reserve. Plaintiff was denied a commission in May 1983 because she was pregnant and had a history of severe dysmenorrhea. This suit was filed to challenge that denial. The defendants noticed a motion for summary judgment on December 27, 1983. The return date of the motion was adjourned, and in the interim plaintiff reapplied for a commission in the Naval Reserve. As a result of this new application, the Navy reexamined plaintiff on May 14, 1984. The examining physician's report and recommendation were evaluated by the Navy Medical Command, which determined that plaintiff's history of gynecological problems required a further examination before plaintiff's physical qualifications for the service could be fully evaluated.

Plaintiff refused to undergo this gynecological examination. Accordingly, the defendants' motion for summary judgment was fully briefed and made returnable for July 16, 1984. At the argument on July 16, 1984, the Court suggested that plaintiff submit to the requested examination, and the undersigned stated on the record that if plaintiff passed the examination she would be granted a commission.

Plaintiff's attorney subsequently advised the undersigned that plaintiff would submit to the examination. The Navy scheduled the examination for August 7, 1984. Plaintiff's attorneys advised the undersigned that that date was inconvenient for plaintiff and suggested August 23 or 24, 1984. The Navy rescheduled the examination for August 23, 1984.

Plaintiff's attorneys then wrote a letter dated August 9, 1984 to the Court in which they confirmed the August 23 date. In that letter, plaintiff's attorneys attempted to set forth their understanding of the three issues concerning the examination which they had raised in telephone conversations with the undersigned: 1) the effect of a favorable examination, 2) the reimbursement of travel expenses incurred by plaintiff between Toledo and Euclid, Ohio, and 3) access to the examination for a witness. By letter dated August 13, 1984, the undersigned responded to this August 9, 1984 letter and reiterated that 1) plaintiff would be commissioned if the Navy Medical Command found her physically qualified, 2) that plaintiff could apply to the Navy for reimbursement of travel expenses and 3)

that the examining physician would permit a witness to attend.

Subsequently, plaintiff's attorneys wrote a letter dated August 17, 1984 which was received by the undersigned on August 20, 1984. The letter states "conditions" that plaintiff was· unilaterally placing on the gynecological examination. The letter presented these conditions as non-negotiable and did not request a response concerning their imposition. The terms of the conditions were imprecise and placed in quotations by plaintiff's attorneys. While we did not, and do not, concede to plaintiff's conditions, we elected to proceed with the examination and see whether any dispute concerning the examination in fact occurred.

The letter of August 17, 1984 only requested this office to explain specific procedures "with regard to reimbursement for expenses and procedures to insure that Mrs. Cobb will obtain her commission if she is found to be medically qualified, including all forms and paper work that must be executed by our client." No deadline for a response was placed in the letter.

An immediate response was not made to this request for several reasons. First, both the matter of travel expense reimbursement and the effect of a favorable finding by the Navy Medical Command had been explained to plaintiff's attorneys by telephone and in our letter of August 13, 1984. Second, neither of the issues demanded immediate response because the issues would not be ripe until after the travel expense had been incurred and until after the Navy Medical Command had found plaintiff to be fit. Third, with regard to commissioning, the request sought detailed information about Navy forms which would take time to obtain and which would more properly be handled by a Navy Recruiting Office should plaintiff be found fit after the gynecological examination.

Subsequently, on August 22, 1984, the undersigned received a phone call from plaintiff's attorneys advising that because of the undersigned's failure to respond to the "conditions" set forth in their August 17, 1984 letter, plaintiff would not submit to the examination. The undersigned responded that he had been unaware that any response was expected concerning the conditions.

The plaintiff's attorneys subsequently wrote the court on August 22, 1984 concerning the conversation described immediately above. That letter may leave the impression that plaintiff did not proceed with the gynecological examination due to this office's refusal to give her adequate assurances concerning the examination. This office, however, has made more than adequate assurances. We advised plaintiff's attorneys of the identity of the doctor. No objection to his selection has been made. We arranged for the examination to take place at a time convenient to plaintiff. We gave assurances concerning travel expenses. We stated on the record that plaintiff would have been commissioned if she was found fit by the Navy Medical Command. We determined that plaintiff could have a witness present for the exam. We further advised plaintiff that she would undergo an examination by a gynecologist.

For the first time in the August 17, 1984 letter, plaintiff has objected to the nature of the examination. Plaintiff has demanded that the Navy Medical Command direct the examining physician how to conduct the examination and has asserted that she will not submit to anything more than her understanding of a "regular gynecological exam." The Navy cannot so bind itself. Had the examination taken place, it may have met plaintiff's definition of a "regular gynecological exam." However, plaintiff has a peculiar gynecological problem which has been variously diagnosed to have resulted from several different mechanisms and for which she has had two inconclusive exploratory operations. In light of this history, the exact scope of the examination must be left to the physician to determine as the examination is in progress.

Instead of submitting to the examination and leaving if it became unreasonable, plaintiff has withdrawn her consent to the examination one day before it was to occur

and has for a second time refused to be examined.

Respectfully yours,
RAYMOND J. DEARIE
United States Attorney
By: /s/ Thomas B. Roberts
THOMAS B. ROBERTS
Assistant U.S. Attorney

cc: Paul H. Levinson
Blodnick, Schultz & Abramowitz, P.C.
3111 New Hyde Park Road
Lake Success, New York 11042