Carlene MACK, Individually and on behalf of all other persons similarly situated; Shirley Stukes; Patricia Ramsure; Queen Esther Taylor; Thelma Barnes; Maxine McNeill; and Trina Lewis, Intervenor, Plaintiffs,

v.

Donald RUMSFELD, Individually and in his official capacity as Secretary of Defense; Martin R. Hoffmann, Individually and in his official capacity as Secretary of the United States Army, Defendants.

No. CIV–76–22C.

United States District Court,
W.D. New York.

June 5, 1985.

**1562**

National Center on Women & Family Law, New York City (Phyllis Gelman, New York City, of counsel), Greater Upstate Law Project, New York City (James I. Meyerson, New York City, of counsel), and American Civil Liberties Union of Ohio Foundation, Columbus, Ohio (Bruce A. Campbell, Columbus, Ohio, of counsel), for plaintiffs.

United States Army, Office of the Judge Advocate Gen., Litigation Div., Washington, D.C. (Lt. Colonel Joyce Peters, Washington, D.C., of counsel), United States Air Force, Office of the Judge Advocate Gen., General Litigation Div., Washington, D.C. (Lt. Colonel Guy Sternal, Washington, D.C., of counsel), and Salvatore R. Martoche, U.S. Atty., Buffalo, N.Y. (Kathleen Mehltretter, Asst. U.S. Atty., Buffalo, N.Y., of counsel), for defendants.

CURTIN, Chief Judge.

Plaintiffs challenge the policy of the Army, Army Reserve, Air Force, and Air Force Reserve which prohibits the enlistment, with rare exceptions, of single parents with children under 18 years old. They contend that it violates their rights under the fifth amendment. This case was certified as a class action on June 20, 1977. The named plaintiffs represent the class of women applicants who have been or are being denied admittance into the Army or Air Force because of Army or Air Force policies that deny admittance to a single parent with a child under 18 years of age.

Defendants originally moved for summary judgment in June of 1976. This court denied that motion on February 10, 1978, with leave to renew after additional discovery had taken place. Defendants renewed their motion in June of 1983. Plaintiffs have filed a cross motion for summary judgment.

Plaintiffs attack the constitutionality of the regulations expressing the single parent exclusion policy (*see* Appendix). Plaintiffs list three counts in their complaint. Plaintiffs' first count charges that the Army and Air Force unjustifiably discriminate against unmarried parents of children under the age of 18. As their second count, plaintiffs allege that defendants' policies penalize plaintiffs for exercising their freedom of choice as to family life and that those policies erect an irrebuttable presumption as to the fitness of single parents for military service. Plaintiffs claim that these policies discriminate against women as their third count. (*See* Amended and Supplemental Complaint, March 22, 1977).

Both plaintiffs and defendants have filed extensive exhibits with the court in support of their motions for summary judgment and in opposition to the motions against them. Plaintiffs have submitted, among other things, depositions of their experts, portions of military studies and records, and affidavits from named plaintiffs and others.

Defendants have offered policy statements, military studies, depositions of military personnel and copies of the regulations at issue as they have been amended over the years.

For the reasons that follow, summary judgment is granted to defendants and the complaint is dismissed.

■ Preliminarily, defendants argue that this case is nonjusticiable and/or non-re-

viewable. It appears to the court that these terms are used interchangeably in this context. Defendants also raised this point in their original motion for summary judgment, and the court held that the case was justiciable in its order of February 10, 1978. At that time, the court relied upon *Crawford v. Cushman*, 531 F.2d 1114, 1121 (2d Cir.1976), in which it was held that substantive claims of constitutional dimension against the military are reviewable by the courts. Plaintiffs in this case have raised substantive claims of violations of equal protection and due process as guaranteed by the fifth amendment to the United States Constitution.

Defendants point out that, since the time of this court's 1978 order, several courts of appeals have adopted the approach established by the Fifth Circuit in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971), in testing the reviewability of military decisions. Under this test, a court should examine four factors: 1) The strength of the plaintiff's claim; 2) potential harm to plaintiff if review is denied; 3) type and degree of anticipated interference with the military; and 4) the extent to which military expertise is involved. Using this test, two courts of appeals have found the same policies at issue in this case not proper for review. *See West v. Brown*, 558 F.2d 757 (5th Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520, and *Lindenau v. Alexander*, 663 F.2d 68 (10th Cir. 1981).

The Third Circuit, however, has rejected the *Mindes* test and found the same policies challenged here to be reviewable. *Dillard v. Brown*, 652 F.2d 316 (1981).

> Once a claim falls within these parameters [a constitutional or statutory violation], a court should review the claim on the merits. Even if such a constitutional challenge appears weak or frivolous, jurisprudentially that claim should be rejected on the merits, rather than deemed to be non-justiciable by a federal court. We prefer an analysis which does not mingle concepts of justiciability with those af-

fecting the merits of the claim to the extent that *Mindes* requires.

*Id.* at 323.

*Crawford* is still the law of this circuit (*see Katcoff v. Marsh*, 755 F.2d 223, 233 (2d Cir.1985) ).

■ Plaintiffs have raised constitutional equal protection claims and due process claims, and under *Crawford* and the reasoning of *Dillard*, these claims are justiciable and reviewable.

The Supreme Court's decision in *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), does not remove this case from the realm of reviewability. That case emphasized the deference due Congressional decisions involving the military and national defense. The court pointed to Congress's broad constitutional power to raise and support armies, *citing* Art. I, § 8 of the United States Constitution. It stated that courts have an ultimate responsibility to decide constitutional questions, adding, "deference does not mean abdication." *Id.* at 67 and 70, 101 S.Ct. at 2653 and 2654.

■ That courts have the power and the duty to review military conduct when challenged as violative of the Bill of Rights is clear. The standard of review, however, is far from clear. The military urges that, at most, this court may simply glance at the challenged policies to determine if there is a "rational nexus" between the exclusion of single parents and military readiness. In a recent case from the Eastern District of New York involving a naval reserve policy prohibiting the commissioning of pregnant cadets, the court interpreted *Rostker* as requiring mere rationality to withstand a claim of gender discrimination under the fifth amendment. *Cobb v. United States Merchant Marine Academy*, 592 F.Supp. 640, 643–44 (E.D.N.Y.1984).

In *Rostker*, the Court apparently declined to adopt such a test:

> We do not think that the substantive guarantee of due process or certainty in the law will be advanced by any further "refinement" in the applicable tests as suggested by the Government. An-

nounced degrees of "deference" to legislative judgments, just as levels of "scrutiny" which this Court announces that it applies to particular classifications made by a legislative body, may all too readily become facile abstractions used to justify a result. In this case the courts are called upon to decide whether Congress, acting under an explicit constitutional grant of authority, has by that action transgressed an explicit guarantee of individual rights which limits the authority so conferred. Simply labeling the legislative decision "military" on the one hand or "gender-based" on the other does not automatically guide a court to the correct constitutional result.

*Rostker* at 69–70, 101 S.Ct. at 2654–2655.

The Second Circuit has provided an interpretation of the *Rostker* decision in a slightly different context. In *Katcoff v. Marsh,* 755 F.2d 223 (2d Cir.1985), two taxpayers sought an injunction against Congress's continuation of the Army's military chaplain program, claiming that government financing of the program violated the establishment clause of the first amendment. Citing *Rostker,* the court said:

> The line where military control requires that enjoyment of civilian rights be regulated or restricted may sometimes be difficult to define. But caution dictates that when a matter provided for by Congress in the exercise of its war power and implemented by the Army appears reasonably relevant and necessary to furtherance of our national defense it should be treated as presumptively valid and any doubt as to its constitutionality should be resolved as a matter of judicial comity in favor of deference to the military's exercise of its discretion.

*Katcoff* at 234.

This court is well aware that the policies under attack here were not promulgated by Congressional act, but by military regulation. Yet the Supreme Court has held that military policies made under an explicit grant of Congressional authority are entitled to deference. *See Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 890–91, 894, 81 S.Ct. 1743, 1746–47, 1748, 6 L.Ed.2d 1230 (1961). Here, the military defendants set enlistment requirements through the authority of Congress, which gave the Secretaries of the Army and Air Force the power to promulgate enlistment standards. 10 U.S.C. §§ 505, 510(b), 3012(g), 8012(f). *Goldman v. Secretary of Defense,* 734 F.2d 1531, 1538 (D.C. Cir.1984).

In light of the above discussion of the standard of review, this case is amenable to summary judgment. Both parties have engaged in extensive discovery and neither requests additional time. In fact, both ask the court to decide the case on summary judgment, because a trial will add little, if anything, to the record.

■ Plaintiffs claim the exclusionary policy violates their fundamental constitutional right to freedom of choice in family matters and creates an irrebuttable presumption as to the fitness of single parents for military service, all in violation of the due process clause of the fifth amendment. The regulations at issue here, however, do not interfere with plaintiffs' constitutional right to have, or not to have, a family. They simply prohibit plaintiffs, as single parents, from enlisting in the Army or Air Force. There is no constitutional right to join the military. *Lindenau v. Alexander,* 663 F.2d at 72–73, and *Crawford v. Cushman,* 531 F.2d at 1125.

■ As their first and third counts, plaintiffs claim the single parent exclusion policies discriminate against them as single parents and as women, in violation of the equal protection clause of the fifth amendment.

Under the Second Circuit interpretation in *Katcoff,* the exclusion policies shall be treated as presumptively valid and constitutional if they are reasonably relevant and necessary to further national defense.

Defendants maintain that these policies are relevant and necessary to the critical concerns of military readiness and mobility. They offer the depositions of several military leaders as well as military studies

based on the results of surveys of commanders, supervisors, and married couples with children, both of whom are in the military, or single parents.

For instance, Major General H. Norman Schwarzkopf, Director for Military Personnel Management and Acting Assistant Deputy Chief of Staff for Personnel at the Pentagon, was deposed by defendants in November of 1982. He stated that a key concern of the military is the ability to deploy forces in the United States overseas as rapidly as possible. Single parents, according to the General, pose a threat to the Army's ability to mobilize quickly. He admitted that a detailed analysis of the numbers of single parents who might not be prepared to deploy has not been done, since it is "not a question of numbers," but of the "war-fighting capability of the Army." (Item 146, p. 39)

General Schwarzkopf served as the Assistant Division Commander of the Eighth Infantry Division and Community Commander of Mainz Military Command in Germany from 1970 to 1972. He was in charge of personnel management for 12,-000 people in a U.S. Army community. He estimated that approximately 100 single parents lived in the community and said that some were deficient in performance. While he had no exact numbers, he said that the percentage of single parents who failed to report for alerts was "dramatically different" from the percentage of other soldiers. General Schwartzkopf recalled that division commanders repeatedly mentioned the availability of single parents as a matter of concern (Item 146, pp. 15–16).

Major General Kenneth LeRoy Peek, Director of Personnel Plans for the Air Force, served as Vice Commander, then as Commander, of the Air Force Manpower and Personnel Center at Randolph Air Force Base from March of 1979 until July of 1982. In that position, he encountered a "significant amount of concern" on the part of local commanders, supervisors and first sergeants about the difficulties some single parents had in meeting duty requirements (Item 147, pp. 9–11).

Other military leaders pointed to the serious problems single parents encounter during basic and technical training. (*See* Deposition of Air Force Lt. General B. L. Davis, Item 49, pp. 11 and 22, and Deposition of Air Force Lt. Colonel Donald Post, Item 50, pp. 13–15).

Defendants also submitted military studies which in part dealt with single parents. For example, a report by the Women in the Army Study Group was prepared in December 1976 (Defendants' Exh. K). Comments solicited from major army commands formed the basis of the study. They were requested to determine whether single parents, both male and female, had a bad effect on unit readiness.

Some units reported no problems with single parents when there were only a few involved, but noted serious problems when significant numbers of single parents were in a unit. Specifically, single parents did not have the flexibility to work irregular hours or different work schedules. They also were said to need considerable advance warning before extended leave (Exh. K, Chap. 7, pp. 8–9).

From October 1980 through April 1981, the Air Force studied the readiness and availability of single parents (Report of the Availability of Single Member Sponsors and Military Couples with Dependents, Defendants' Exh. G).

Military leaders, single parents, and military couples with children were interviewed in 27 Air Force bases. The focus of the survey was AF 35–59, an Air Force regulation dealing with provisions for child care. The results of the study showed that commanders strongly believed that single parents and military couples with children were not prepared to deploy on short notice. Younger, less experienced single parents and military couples with children tended to view themselves as less available and the chances of being called upon to deploy as less likely than did more experienced single parents or military couples.

The report concluded that the current stringent waiver policies for enlistment of

single parents and military couples with children should be continued. It recommended that the policy of discharging those who become single parents and are not available be enforced (Defendants' Exh. G, pp. 4–5).

Another one of the many Air Force studies, also based on surveys, found that many commanders believed that single parents lost more time than military couples with children or Air Force personnel with civilian spouses (*see* Study by Air Force Manpower and Personnel Center, January 1982, Defendants' Exh. H, p. 24).

Plaintiffs maintain that defendants' policies of retaining enlisted personnel who become single parents are fundamentally inconsistent with their position. They argue that if defendants were truly concerned about single parents disrupting mobilization and readiness, no amount of investment in training or gain in maturity and experience would justify retaining those who become single parents (Item 169, pp. 103–04).

What plaintiffs fail to take into account is that single parents whose performance deteriorates can be either discharged or barred from reenlistment (*see* Item 146, pp. 39–41, Deposition of Army Major General Schwarzkopf). In fact, The U.S. General Accounting Office [GAO] Report to the Secretary of the Army dated September 13, 1982, recommended that the Army forego discharging all those who became sole and in-service parents or assigning them to positions coded as "nondeployable" until further study.

As noted earlier, the Air Force report on the availability of single parents (Defendants' Exh. G) recommended enforcement of the policy of discharging those who are not consistently available as well as recommending maintaining stringent restrictions on the enlistment of single parents.

Major General Schwarzkopf pointed out that those who become single parents while serving are not automatically discharged because they, unlike new enlistees, represent a valuable resource to the military due to their training and experience (Item 146, pp. 39–41).

Certainly, defendants' refusal to automatically discharge soldiers and Air Force personnel who become single parents does not indicate that barring the enlistment of single parents on the basis of a need to sustain maximum readiness and mobility is pretextual. The military has no investment in those who seek enlistment, nor any commitment to them. Those who have been in the service have training and experience and can be discharged or reassigned if their performance declines.

Plaintiffs also urge that the repeated linkage of single parenthood with women's issues reveals that the policies were motivated in part by a discriminatory purpose.

A perusal of defendants' exhibits shows that single parenthood is frequently associated with women's issues. For example, defendants' Exhibit H, a report by the Air Force Manpower and Personnel Center, utilized written surveys. The first portion of these surveys asked commanders to evaluate the performance of female enlistees and of male enlistees. Another segment of the survey asked questions about the performances of single parents and military couples with children. A latter segment inquired about pregnancy (*see* Exh. H, Appendix B).

Single parenthood was also addressed by the Army as a women's issue. Defendants' Exhibit I, an opinion survey on the role of women in the Army, links pregnancy and sole parenthood. Exhibit K, although explicitly referring to the sole parent issue as applying to both men and women (Chap. 7, p. 8) was prepared by the Woman in the Army Study Group, which viewed it in part as a issue related to pregnancy (p. 1–A–6).

A 1981 Department of Defense Report, *Background Review: Women in the Military*, stated, "Sole parents, whose numbers are increasing in the military, are frequently thought to be a female issue." (Defendants' Exh. 22 at 7.) Plaintiffs' expert, Kathleen Carpenter, who was Deputy Assistant Secretary of Defense of Equal Opportunity in the Office of Secretary of De-

fense during the Carter administration, affirmed this. She testified at a deposition that the single parents issue was considered to be a woman's issue (Plaintiffs' Exh. 7, p. 23). Plaintiffs' expert, Kurt Lang, a professor of Sociology at State University of New York at Stoney Brook, notes that single parenthood continues to be associated with illegitimacy and a dissolute lifestyle (Plaintiffs' Exh. 12, p. 8).

While the plaintiffs have indeed demonstrated a frequent linkage of single parenthood with pregnancy and women's roles in the military, this alone does not make the regulations unconstitutional. Plaintiffs have not shown that the regulations exist in part "because of" and not just "in spite of" their adverse effects on women. *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). (Defendants have agreed, for the purposes of summary judgment, to assume the challenged regulations, while facially neutral, have a disparate impact on women.)

As defendants point out, the military has placed restrictions on the peacetime enlistment of people with dependents since 1841, 107 years before women were admitted into the armed forces. These regulations changed in content and restrictiveness over the years but usually were in force, in one form or another, throughout this period (*see* Item 158, Appendix A, and Defendants' Exhibit A). The military's concern about enlisting those with dependents has long been evident and, historically at least, was unrelated to gender.

Furthermore, the military places quotas on the number of women allowed to enlist. Such quotas could be used to directly reduce the number of women enlisting without resort to a single parent subterfuge. Of course, this in itself does not demonstrate that defendants were not employing a facially neutral statute for a discriminatory purpose, but it lends support to defendants' position.

Even if plaintiffs could make a showing of discriminatory purpose, more would be required.

Plaintiffs claim defendants have not shown that the regulations are substantially related to important governmental objectives, the test in gender equal protection cases (Item 169, Plaintiff's Brief at p. 96, *citing Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976)). However, as stated above, in light of *Rostker* and the Second Circuit's interpretation in *Katcoff,* the question in the military context is simply whether the challenged regulations are reasonably relevant and necessary to the national defense.

Plaintiffs offer depositions and affidavits indicating that defendants failed to engage in any detailed statistical analysis to determine the actual quality of work by single parents in comparison to other personnel. Plaintiffs claim the potential effect of single parents on readiness and the ability to deploy quickly in the event of an emergency has never accurately been gauged. The policies challenged here, they say, are not founded on social science studies but the intuition of military leaders (Item 169, p. 17).

Plaintiffs rely primarily on the critique by their expert, Professor Lang, to highlight the deficiencies in military studies of the single parent issue and to show the absence of evidentiary validation for these policies.

Professor Lang concluded that military studies do provide evidence that some single parent service members have difficulty meeting their peacetime duties and that some of these problems are certainly related to inadequate child care. Yet, he also believed that the studies show that the large majority of single parents are performing at least satisfactorily (Plaintiffs' Exh. 12, p. 1).

One of Professor Lang's main contentions is that studies based on the opinions of military commanders with responsibility for national security tend to exaggerate the magnitude of the problem. (Plaintiffs' Exh. 12, p. 9). He notes that many command centers surveyed by the Army in 1976 (Defendants' Exh. T) reported only

minor problems with single parents, which could be dealt with on an individual basis. (Plaintiffs' Exh. R, p. 17–19). In fact, Professor Lang believes that when the results of the surveys are tabulated, they show that single parenthood "does *not* result in an excessive loss of time or create major problems that cannot be handled in the framework of regulations." (*Id.* at 19.)

However, single parents need not cause an excessive loss of time or create major problems to make the regulations excluding them reasonably relevant and necessary to the national defense.

Professor Lang also pointed out that interview or survey questions are broad-based, biased in that they link single parenthood to women and sometimes phrase the issue as a "problem," and rely on "self-reports," by single parents, which he claims are of doubtful validity (Exh. 12).

Professor Lang's concerns are echoed by Robert Pirie, Jr., Director of the Naval Strategy Program at the Center for Naval Analyses. From 1979 to 1981, he was the Assistant Secretary of Defense for Manpower Reserve Affairs and Logistics. He noted that there are analytical studies available to obtain objective information about the magnitude of the single parent problem. (Plaintiffs point out that the military customarily relies on detailed statistical analysis when examining issues relating to enlistment.) Mr. Pirie indicated that he would prefer to "utilize both statistical analyses and reports of commanders, as have been relied on in the past, to formulate a single parent policy. In his experience, analytical studies frequently contradict the intuition of military leadership. Mr. Pirie did not know whether this would be the case with the single parent policies (Plaintiffs' Exh. 5, pp. 38–39).

Perhaps the strongest support for plaintiffs on this issue comes from defendants. In 1982, the GAO prepared a report to the Secretary of the Army entitled "Army Needs Better Data to Develop Policies for Sole and Inservice Parents" (Defendants' Exh. N).

The report was based on questionnaires sent to first-line supervisors at Fort Bragg and Army installations in Europe. Professor Lang pointed out that studies based on evaluations by direct supervisors were more valid than those based on interviews with commanders (Plaintiffs' Exh. 12, p. 21). Based on these responses, the GAO concluded that sole and in-service parents attended and performed at least satisfactorily and would most likely be available in the event of war (Defendants' Exh. N, p. 4). The study recommended that the Army forego discharging all who become single parents or a military couple with children until objective and scientific data is obtained. It also recommended that data be developed to "reconsider the reasonableness of restricting enlistment of sole and in-service parents." (Defendants' Exh. N, p. 11.)

The court agrees that better, more reliable techniques for assessing the day-to-day performance and the likely availability of single parents in time of national crisis should be implemented, particularly in light of the GAO report to the Secretary of the Army in 1982 (Defendants' Exh. N). However, the *Rostker* decision and the interpretations provided by the D.C. Circuit in *Goldman v. Secretary*, 734 F.2d 1531, and by the Second Circuit in *Katcoff* place a minimal burden on the military in defending its policies against constitutional attack. The policies need only be "reasonably relevant and necessary to furtherance of our national defense," and "any doubt as to its constitutionality should be resolved ... in favor of deference to the military's exercise of its discretion." *Katcoff*, 755 F.2d at 234.

Defendants have provided the court with evidence, as discussed above, that there are problems with some single parents in flexibility with duty schedules and reporting for duty on short notice. These problems create concern on the part of many military leaders that single parents will not be available in the event of an emergency. Also, Air Force commanders discussed the burdens on single parents during basic and technical training.

The court has been presented with a challenge to the constitutionality of single parent *enlistment* restrictions only, not the regulations providing for the ouster or reassignment of trained personnel who become single or in-service parents after enlistment. Based on defendants' evidence, I cannot conclude that a policy barring single parents from military service at the enlistment level is not reasonably relevant to and necessary for the furtherance of the national defense.

Plaintiffs point out that the military provides child care facilities to personnel who are already enlisted (Exhs. 43 and 44). They note that these services could be expanded. Strict enforcement, they say, of regulations requiring discharge for military parents who are performing poorly and regulations requiring the maintenance of careful dependent care planning would be an alternative to a blanket prohibition against single parent enlistment. *See Katcoff*, 755 F.2d at 235.

Plaintiffs also suggest that prohibiting single parents from bringing their children to basic or technical training would be a reasonable alternative. Plaintiffs even urge that current regulations limiting the locations to which a service member may bring children be extended to cover single parents, with perhaps more rigid limitations on single than married parents (Plaintiffs' Brief, Item 169, pp. 128–29).

Again, however, plaintiffs skim over the difference between those who have already undergone training and have experience and those who are attempting to enlist. As discussed earlier, simply because the military provides child care services to trained personnel does not mean it is required to provide such services for those who are seeking to enlist. A common theme from the evidence submitted by defendants is a concern with the growing number of single parents and military couples with children and a belief that the greater the number, the greater the potential that readiness would be undercut. Under these circumstances, admitting those who are already single parents would increase the burden.

Plaintiffs have not shown that setting a lower age limit for dependents, rather than age 18, would significantly alleviate these problems. Nor does setting the age limit at the level at which commercial airlines permit minors to fly unaccompanied present a practical solution.

The most dramatic single illustration offered by plaintiffs supporting individual waivers involves named plaintiff Thelma Barnes. Ms. Barnes and her sister enlisted in the Army Reserves on the same day. Each had a child, but only the sister was married. Although Ms. Barnes transferred guardianship of her child to her mother, her enlistment was voided under the regulations then in force. Her sister, although she was married, relied on their mother to care for her child, as Ms. Barnes would have. The sister remained in the Reserves was promoted to sergeant (*see* Exh. 17). This lends support to plaintiffs' argument that, at the least, single parent applicants should be reviewed on an individual basis.

It should be noted that both the Army and the Air Force had experimented with more liberal restrictions on the enlistment of single parents, permitting waivers for single parents if the application was "meritous" or if they could provide a detailed dependent care plan. Both the Army and Air Force had liberalized policies for a period in the early 1970s. The Air Force made another attempt from 1978–81. Both branches returned to the stringent regulations, such as those which barred the enlistment of the named plaintiffs, because the liberalized enlistment requirements were perceived to impair the readiness of the military and create problems in training (*see* pp. 14–24, Item 158).

Finally, plaintiffs urge the court to consider differences between the Army and Air Force and between the active branches and the reserves. Although the Army and Air Force do have differences in their functions and needs, each has provided evidence, in the form of depositions and studies, that single parents pose some threat to readiness and mobility.

Plaintiffs' point as to the reserves has more appeal at first glance. Reservists live in civilian communities and are called upon only occasionally to report for duty. The purpose of the reserves is to be active in the event of war. Major General Paul S. Williams, Army Director of the Office of the Deputy Chief of Staff, cautioned that, although less time is required of the reserves during peacetime, there may be a need for sudden mobilization (Item 51, pp. 34–36). Robert Pirie, Jr., described the "total force concept," in which the active Army (Air Force) and its reserves are viewed as one force. He stated that, in the event of an emergency, the reserves would be required to deploy in accordance with schedules which would be just as stringent as those of the active Army or Air Force (Plaintiffs' Exh. 5, pp. 57–59). In light of this, regulations proscribing single parent enlistment in the active forces would be equally valid for the reserves.

Plaintiffs' motion for summary judgment is denied. Defendants' motion is granted, and the complaint is dismissed.

So ordered.

APPENDIX A.

ARMY AND RESERVES

Army Regulation AR 601–210
Effective April 1, 1975, and continued July 28, 1976

Same as Army Reserve Regulation AR 140–111, Effective May 1, 1975

RULE F—DEPENDENTS
IF APPLICANT IS
Without Prior Service ...

(2) An applicant without a spouse and with one or more dependents under 18 years of age is disqualified, except as provided in (3) and (4) below. No waiver is authorized.

(3) A divorced applicant may be processed for enlistment when the child or children have been placed in the custody of the other parent by court order and the applicant is not required to provide child support. No waiver is required.

(4) A divorced applicant may be processed for dependency waiver when the child or children have been placed in the custody of the other parent by court order and the applicant is required to provide child support.

Army Regulation AR 601–210
Effective November 1, 1980, as amended December 1, 1980

F—DEPENDENTS
With or without prior service

2. An applicant "without a spouse"—

a. who has "dependent(s)" under 18 years of age who has been placed in the custody of the other parent or another adult by court order, or as provided by state law and the applicant is

(1) not required to provide child support or required by court order to provide child support for 2 or less "dependent(s)."

(2) required by court order to provide child support for three or more "dependent(s)."

b. who has "dependent(s)" under 18 years of age who has not been placed in the custody of the other parent or another adult by court order or as provided by state law.

Eligibility Status

a. (1) Eligible.

(2) Not eligible; waiver requests considered.

b. Not eligible; waiver requests not considered.

Army Reserve Regulation AF 140–111
Effective February 1, 1979

RULE F—DEPENDENTS
IF APPLICANT IS
Without Prior Service

(2) An applicant without a spouse and with one or more dependents under 18 years of age is disqualified, except as provided in (3) and (4) below. No waiver is authorized. An applicant without a spouse is defined as an applicant who is unmarried, is divorced, is legally separated, spouse is deceased, spouse has deserted applicant, spouse is incarcerated, spouse is not residing permanently with applicant, or applicant has sole custody of the dependents.

(3) An applicant without a spouse may be processed for enlistment when the child or children have been placed in the custody of the other parent of the child or children by court order and the applicant is not required to provide child support. No waiver is required.

(4) An applicant without a spouse, required to pay support for no more than two dependents under 18 years of age and where said dependents have been placed in the custody of the other parent of the child or children by court order, may be processed for enlistment without a waiver. If there are more than two dependents, a waiver is required prior to enlistment.

Army and Army Reserves combined Regulation AR 601–210
Effective October 1, 1982, through date of decision

2. An applicant "without a spouse"—

a. Who has "dependent(s)" under 18 years of age who has (have) been placed in the custody of the other parent or another adult by court order or as provided by State law and the applicant is—

(1) Not required to provide child support or required by court order to provide child support for two or less "dependents."

(2) Required by court order to provide support for three or more "dependents."

(3) Servicemembers who have surrendered custody of dependents under this rule will certify at the time of enlistment that it is their intent that the custody agreement will survive the term for which enlisting; servicemembers who enlist subject to this provision and who regain custody of their children during the term of enlistment will be

processed for involuntary separation for fraudulent enlistment unless they can show that the regaining of such custody is not contrary to the intent stated upon enlistment.

b. Who has "dependent(s) under 18 years of age who has (have) not been placed in the custody of the other parent or another adult by court order or as provided by State law.

Eligibility

a. (1) Eligible.

(2) Not eligible; waiver requests considered.

(3) Eligible; DA Form 3286–31R (Fig. 2–1) will be executed at the time of enlistment. DA Form 3286–31R will be locally reproduced on 8½ x 11–inch paper.

b. Not eligible; waiver requests not considered.

## APPENDIX B.

## AIR FORCE AND AIR FORCE RESERVES

AFR–33–3
Effective March 31, 1975

Applicants are ineligible to enlist if one of the following conditions exists

\* \* \*

15. Applicants with one or more dependents under age 18 but without a spouse in household (note 4.) (Not applicable for enlistment in the ROTC or OTS programs.)

4. See paragraph 1–1j for definition of dependent. Dependency waivers may be requested:

a. When dependents have been placed by court order into the custody of some other person (irrespective of applicant's responsibility to provide child support payments), or

b. For former Air Force members separated for pregnancy who apply for reentry within 1 year of date of separation.

AFR 33–3
Effective October 14, 1977

Applicants are ineligible to enlist when one of the following conditions exist

\* \* \*

12. Applicant with one or more dependents under age 18 but without a spouse in household or with a common-law spouse (see notes 2 and 5). (Not applicable for enlistment in the Officer Training School or Prior Service programs.)

NOTES:

2. See paragraph 1–1h for definition of dependent. Dependency waivers may be requested:

a. When dependents have been placed by court order into the custody of some other person (irrespective of applicant's responsibility to provide child support payments) or

b. When dependents have been placed for an indefinite period of time in the physical care, custody, and control of a person who has been authorized by the parent's notorized [sic] Certificate of Child Care Arrangements to act on behalf of the dependent(s). The custody period involved will vary based on job assignment and will cover basic military training and technical training, if required. Additionally, it is recommended that the dependent(s) not join the parent at initial duty station until such a time as the parent has adjusted to the job and military base environment and made full arrangements for child care.

c. No waiver is required if applicant can prove permanent transfer of legal control to some other person through court order or adoption proceedings, provided actual transfer of legal control over the child(ren) has occurred. Child(ren) must still be listed on enlistment documents and present status explained. Documents (court order or adoption papers) must be reviewed by the recruiter and AFEES I NCO. An AF Form 3010, Statement of Understanding (Dependency) must still be signed by the applicant.

\* \* \*

5. An applicant with minor children and a common-law spouse should be considered to be enlistment eligible if both parties are bona fide domiciled in a State recognizing common-law marriage, at the time they enter into such relationship. Waivers for enlistment under this situation are processed to the Recruiting Service Squadron Commander for approval.

ATCR 33–2
Effective August 31, 1982

(a) In the case of an applicant having any minor dependents and NO SPOUSE IN THE HOUSEHOLD, waiver is authorized if care, custody, and control of minor dependents have been assumed by another individual via court order. In addition, the applicant must complete a handwritten statement using ATC Form 1357, Dependent Care Statement regarding plans for post-enlistment care. Divorced or separated applicants must provide a plan should they be required to resume custody.

(b) Waivers may be considered only where custody of minor dependents has been transferred by court order to another person.

1. Bonafide court orders are the only acceptable documents that can be used to prove transfer of custody. Applicants must provide an original order (or copy) authenticated by a court official.

2. Evidence of custody transfer must show that it is unconditional and contain no conditions under which the applicant would resume custody during the initial term of service.

3. When an applicant claims or acknowledges to be the parent of an illegitimate child and no court order was or will be issued, a written agreement to pay child support and (or) an affidavit from the custodial parent establishing unconditional custody of the child with parties other than the applicant may be sufficient proof. Use of such documents apply only where court orders were not issued.