Vivian **LEWIS**

v.

**UNITED STATES ARMY, et al.**

**Civ. A. No. 87–2721.**

United States District Court,
E.D. Pennsylvania.

Sept. 27, 1988.

Patricia Garrett, Jeffrey Solar, Philadelphia, Pa., for plaintiff.

Drake Cutini, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

This action involves a challenge to the enlistment policy of the United States Army (Army) and United States Army National Guard (USANG) that permits men who have not graduated from high school but who have obtained a General Educational Development (GED) certificate to enlist but prohibits women from so doing.

I have before me the federal defendant's (the government) motion for judgment on the pleadings. In accord with my pretrial order and Fed.R.Civ.P. 12(b), I will treat the motion as one for summary judgment under Fed.R.Civ.P. 56. For the reasons set forth below, the motion is GRANTED.

**1.** For fiscal year 1986, Congress placed a ceiling on the number of active army personnel at 780,000. Memorandum in Support of the Federal Defendants' Motion for Judgment on the Pleadings, and Pretrial Memorandum, [hereinafter Defendants' Memorandum], App. A at 2. The Army indicates that female enlisted comprised 70,690 of the total. Defendants' Memorandum, App. B.

## I. *Background*

Under a policy promulgated by the Secretary of the Army, women soldiers are excluded from units or positions that would require participation in combat. Army Reg. 611–201, ¶ 4–1; Army National Guard Reg. 600–200, ¶ 2–12a. As a result of this combat exclusion policy, a much greater number of men must be enlisted than women.[1] On the basis of empirical studies, the Army has found that high school diploma graduates (HSDG) are more likely to complete their initial term of enlistment and to reenlist than GED holders and non–HSDGs. Defendants' Memorandum, App. A. Because sufficient HSDG males cannot be recruited to meet annual Army and USANG requirements, a limited number of male GED holders and non–HSDG applicants are permitted to enlist.[2] On the other hand, because the Army and USANG have been able to obtain enough woman accessions who are high school graduates, they have not permitted female GED holders or non–HGDGs to enlist.

Plaintiff Lewis has a GED certificate and has earned some college credits. In July 1986 Ms. Lewis sought to enlist in the Army and USANG. Although female GED holders are not permitted to enlist, female GED holders with fifteen hours of college credit are permitted to enlist. Army Reg. 601–210, Table 2–1, Rule D; Army National Guard Reg. 600–200, Table 2–1, Rule D, as amended by Army National Guard Accession Criteria for Fiscal 1987. When it was determined that Ms. Lewis had only twelve hours of college credit, she was told that she was not eligible for enlistment in the Army. Defendants' Memorandum, App.D. She also was "discharged" from the USANG for the same reason.[3]

**2.** For fiscal year 1986, 89% of the male accessions were HSDGS. Defendants' Memorandum, App. A at 5.

**3.** The term "discharge" is an apparent reference to the fact that Ms. Lewis apparently participated in three weekend training drills with the USANG prior to the determination that she was not eligible for enlistment. Defendants' Memorandum at 3.

Ms. Lewis commenced this action on May 8, 1987. As amended, the complaint names as defendants the Secretary of Defense of the United States, the Chief of the Army National Guard, and the United States of America. Ms. Lewis alleges that the aforementioned enlistment policy[4] discriminates against her and women in general, and that it denies her equal protection of the law and due process. Remedies sought include damages, a declaration that the enlistment regulation is unconstitutional on its face or in its application, and an order allowing plaintiff to enlist in the Army or USANG.

## II. Standard for Summary Judgment

A trial court may enter summary judgment if, after a review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates*, 595 F.Supp. 800 (E.D.Pa.1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the non-moving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3rd Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

The moving party has the initial burden of identifying evidence which it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions or answers to interrogatories showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, when the nonmoving party bears the burden of proof, it must " 'make a showing sufficient to establish [every] element essential to that party's case.' " *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## III. The Parties' Arguments

Ms. Lewis argues that the enlistment policy of the Army and USANG is unconstitutional on its face and as applied to her and women in general. As a policy that distinguishes between men and women solely on the basis of gender, Ms. Lewis contends that the government must demonstrate that the policy is substantially related to the achievement of an important government objective. She further asserts that the government has failed to show that the exclusion of women with GEDs substantially furthers the Army's recruiting goals, and argues that a question still remains regarding this issue.

The government, on the other hand, argues that the enlistment policy is reasonable and necessary for the recruitment of adequate numbers of the highest quality soldiers. First, it notes that HSDGs are favored because they have lower attrition rates and higher retention rates than non-HSDGs. Because women are excluded

---

In their motion, the federal defendants indicate that a preliminary investigation has revealed that the Ms. Lewis *may* be barred from enlistment because of her status as an unmarried person with custody of a dependent child. Army Reg. 601–210, Table 2–1, Rule F; Army National Guard Reg. 600–200, Table 2–1, Rule F. This is not stated as a definitive reason for the action taken against her by the Army and USANG, and is not relevant to her challenge to the GED criterion.

4. Ms. Lewis alleges a constitutional violation with respect to the same enlistment criterion applied by both the Army and USANG. Both the Army and USANG have the same policy and it has the same basis. Thus, references in this memorandum to the Army or Army GED enlistment criterion will refer also to the USANG and its enlistment criterion unless otherwise noted.

from combat positions, more men than women are needed in the Army. To obtain a sufficient number of men, the Army permits a limited number of non-HSDGs to enlist. Enough female HSDGs can be recruited to fulfill the Army's needs, however, so women enlistees are required to be HSDGs. Finally, although the government believes that the appropriate standard of review is one of rationality, it contends that the GED criterion is constitutional under any standard of review.

### IV. *Discussion*

I must now decide whether the parties have met their respective burdens regarding the government's motion for summary judgment, and, if appropriate, whether the enlistment policy is constitutional.

#### A. Factual Issues

As the moving party, the government must initially show an absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988). For purposes of this motion, the parties agree that plaintiff has a GED certificate but not a high school diploma, and that for this reason she was not eligible for enlistment in the Army.

As part of its motion, defendants have included an affidavit from the Army's Acting Director of Military Personnel Management. Through this affidavit, defendants purport to show the following: that fewer women than men can be enlisted because of the combat exclusion policy; to obtain the best quality recruits at the lowest cost, the Army desires to have HSDG over non-HSDG and GED holders, because HSDG have lower attrition and higher retention rates; and that sufficient numbers of female HSDG enlist for the Army to prohibit enlistment of female non-HSDG and GED holders.

In response to defendant's motion, plaintiff contends that a genuine material issue exists as to whether the enlistment policy is constitutional. Disagreeing with the defendant as to the level of scrutiny to be applied to the policy, she argues that a question still remains as to whether the policy is substantially related to the achievement of an important government objective. Plaintiff also asserts that the "empirical studies" upon which the Army relies to support its preference for HSDG may contain erroneous or misleading data that may affect the reliability of the studies.

■ In reviewing the parties contentions, I find no genuine dispute of fact regarding plaintiff's educational status as a non-HSDG or that this status was the reason for the Army's refusal to enlist her. As to plaintiff's allegation regarding the particular level of scrutiny to be applied, that raises a question of law and does not present a disputed factual issue.

■ The only remaining issue suggested by the plaintiff is the sufficiency of the empirical studies on which the Army relies in preferring HSDGs over non-HSDGs. In support of its motion, the government has offered, inter alia, the affidavit of the Army's Acting Director of Military Personnel Management. Defendants' Memorandum, App. A. In opposition, plaintiff has chosen to rest upon the allegations contained in her pleadings. Although she has made assertions about the validity of Army's studies, the assertions are unsupported by factual data. This is insufficient under Fed.R.Civ.P. 56(e), which requires the nonmoving party to go beyond the pleadings and by her own affidavits, depositions, answers to interrogatories, and admissions on file, set forth specific facts showing that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). Having failed to properly meet her burden in resisting the government's summary judgment motion, I find that there is no genuine issue as to any material facts, and that this matter is appropriate for summary judgment.

## B. Legal Issues

The central legal issue in this case is whether the Army's enlistment policy that permits enlistment by male GED holders but not female GED holders violates the equal protection clause of the Constitution. Prior to confronting that issue, however, I must determine the appropriate standard of review.

■ As an initial matter, the government believes that the enlistment criterion challenged by the plaintiff is the type of internal military decision that is not judicially reviewable. *See Orloff v. Willoughby*, 345 U.S. 83, 92–95, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1983) (no jurisdiction to review assignments to duty); *see also Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971) (adopting a formula to determine justifiability of military related challenges). Most circuits that have taken a position on the issue have adopted the *Mindes* approach. *See Navas v. Vales*, 752 F.2d 765 (1st Cir. 1984); *Williams v. Wilson*, 762 F.2d 357 (4th Cir.1985); *Gochnour v. Marsh*, 754 F.2d 1137 (5th Cir.), *cert. denied*, 471 U.S. 1057, 105 S.Ct. 2121, 85 L.Ed.2d 485 (1985); *West v. Brown*, 558 F.2d 757 (5th Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978); *Nieszner v. Mark*, 684 F.2d 562 (8th Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1273, 75 L.Ed.2d 494 (1983); *Sandidge v. Washington*, 813 F.2d 1025 (9th Cir.1987); *Khalsa v. Weinberger*, 787 F.2d 1288 (9th Cir.1986); *Lindenau v. Alexander*, 663 F.2d 68 (10th Cir.1981); *Rucker v. Secretary*, 702 F.2d 966 (11th Cir.1983). The Third Circuit, however, has rejected the analysis of *Mindes v. Seaman* and has held that a military enlistment criterion is reviewable. *Dillard v. Brown*, 652 F.2d 316 (3d Cir.1981); *accord Katcoff v. Marsh*, 755 F.2d 223 (2d Cir.1985). *See also Jorden v. National Guard Bureau*, 799 F.2d 99, 109 (3d Cir.1986), *cert. denied sub nom. Sajer v. Jorden*, — U.S. —, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987) (requests for injunctive relief against military are reviewable generally).

While the Third Circuit has held that military enlistment criteria are reviewable, it has stated that "judicial intervention in this context should only be undertaken with care and circumspection." *Jaffee v. United States*, 663 F.2d 1226, 1237–38 (3d Cir.1981). In *Jaffee*, the court of appeals acknowledged the advisory of the Supreme Court in *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), regarding the "lack of competence on the part of the courts in regulating military affairs." *Id.* at 1237. Quoting *Rostker*, the court noted:

> It is difficult to conceive of an area of government activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping and control of a military force are essentially professional judgments, subject always to civilian control of the legislative and Executive branches.

*Id.* at 1237 (quoting *Rostker*, 453 U.S. at 65–66, 101 S.Ct. at 2652).

The Second Circuit has taken a view similar to that of the Third Circuit with regard to judicial review of military affairs, *see Crawford v. Cushman*, 531 F.2d 1114, 1119–21 (2d Cir.1976), and a recent case in that circuit provides additional guidance in defining the appropriate standard of review for the matter before me. In *Mack v. Rumsfeld*, 609 F.Supp. 1561 (W.D.N.Y. 1985), *aff'd*, 784 F.2d 438 (2d Cir.), *cert. denied sub nom. Mack v. Weinberger*, 479 U.S. 815, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), due process and equal protection challenges were brought against military policies that prohibit the enlistment of single parents with dependent children. Finding the standard of review when examining military conduct "far from clear," the district court looked to a previous Second Circuit case interpreting *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), and concluded that the challenged policies should be "treated as presumptively valid and constitutional if they are reasonably relevant and necessary to further national defense." *Mack*, 609 F.Supp. at 1564 (construing *Katcoff v. Marsh*, 755 F.2d 223 (2d Cir.1985)).

As in the case before me, plaintiffs in *Mack* argued that the military defendants

were required to show that the challenged regulations were "substantially related to important governmental objectives," the test in gender equal protection cases. *See Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). On the basis of *Rostker* and *Katcoff*, however, the district court rejected plaintiffs' argument, finding that "the question in the military context is simply whether the regulations are reasonably relevant and necessary to the national defense." *Mack*, 609 F.Supp. at 1567. Holding that the challenged regulations did not violate plaintiffs' constitutional rights, the court acknowledged that this standard placed only a minimal burden on the military and that " 'any doubt as to ... constitutionality should be resolved ... in favor of deference to the military's exercise of its discretion.' " *Mack*, 609 F.Supp. at 1568 (quoting *Katcoff*, 755 F.2d at 234).

■ My research has not disclosed, and the parties have not called to my attention, delineation by the Third Circuit of a specific standard of review for military affairs cases. As indicated above, the Third Circuit has acknowledged the lack of competence on the part of the courts in regulating military affairs and recognized that any intervention by the courts "should only be undertaken with care and circumspection." *Jaffee v. United States*, 663 F.2d 1226, 1237–38 (3d Cir.1981). Although I am unable to predict the exact standard that might be adopted in this circuit, I believe

that it would be similar to that adopted by the Second Circuit in *Katcoff v. Marsh*, 755 F.2d 223 (2d Cir.1985) and used in *Mack v. Rumsfeld*, 609 F.Supp. 1561 (W.D.N.Y. 1985), *aff'd*, 784 F.2d 438 (2d Cir.) *cert. denied sub nom. Mack v. Weinberger*, 479 U.S. 815, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Thus, I will proceed to review the challenged policy using a standard of review that asks whether the regulations are reasonably relevant and necessary to the national defense, with any doubt as to constitutionality resolved in favor of deference to the military's exercise of its discretion.[5]

■ In support of its motion and as provided by Fed.R.Civ.P. 56, the government has submitted three affidavits, one of which warrants discussion.[6] This is the affidavit of Brigadier General Myrna H. Williamson, Acting Director of Military Personnel Management, Office of the Deputy Chief of Staff for Personnel, Headquarters, Department of the Army. Defendants' Memorandum, App. A. A summary of the General's affidavit and representations follows.

Among General Williamson's responsibilities are planning and development of Army enlistment policy and ensuring that recruiting is performed in a manner allowing the Army to meet its assigned strength and quality objectives at the least cost to the government. Towards those ends, she states that the Army seeks to enlist those men and women who appear to have the

---

5. Although Ms. Lewis does not dispute that courts should review military affairs with deference, she argues that as the enlistment policy is based solely on gender, it should be subjected to the level of scrutiny used in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *Craig* involved a challenge to an Oklahoma statute pertaining to the sale of alcohol that contained a gender-based differential, and the Court stated that to withstand constitutional challenge, classifications by gender "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.* at 197, 97 S.Ct. at 457.

Based on my reading of *Rostker v. Goldberg*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), and the Third and Second Circuit opinions mentioned in the text, I conclude that the standard outlined in *Craig* is not applicable to gender-based equal protection claims raised in the context of military affairs, and I instead

adopt the standard indicated above. *See also Mack v. Rumsfeld*, 609 F.Supp. 1561 (W.D.N.Y. 1985), *aff'd*, 784 F.2d 438 (2d Cir.) *cert. denied sub nom. Mack v. Weinberger*, 479 U.S. 815, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

6. The other two affidavits are as follows: (1) affidavit of Lieutenant Colonel Wilbur R. Speer, Personnel Policy Integrator for Regular Army Accessions, Enlisted Accessions Division, Office of the Deputy Chief of Staff for Personnel, who maintains a copy of the enlistment eligibility criteria implemented each fiscal year. The document attached to his affidavit indicates, *inter alia*, that for fiscal year 1986, female enlisted strength was 70,680, and total end strength was 780,800 in the active Army; and (2) affidavit of the staff sergeant who verified that Ms. Lewis was ineligible for enlistment because she had only twelve hours of college credit, not fifteen as required for female non-HSDGS.

greatest aptitude for military service and the highest probability of successfully completing an enlistment. Because of the combat exclusion policy, the Army can absorb only a limited number of female soldiers and has found it necessary to establish different standards for male and female applicants.

According to the General, the Army has found it "most easily obtains maximum quality at minimum cost" by seeking persons who are HSDGs and who have high scores on the Armed Forces Qualification Test. Empirical studies, she states, consistently demonstrate that non–HSDGs who possess a GED fail to complete their initial term of enlistment at a rate nearly twice that of HSDGs. Enlistment criteria are of concern to the Army because of the high costs associated with selecting, classifying, training, and equipping new recruits.

The General further states that the Department of Defense has found that the high school diploma is the best single indicator (readily available, and at the present time) of a person's potential for adapting to the demands of military life, as measured by satisfactory completion of the first term of enlistment. According to the Army, a high school diploma graduate has an approximate 80% probability of completing the first three years of service, while the probability of attrition among GED credential recipients is generally closer to that of nongraduates. Specifically, the Army has found that attrition rates for female GED holders surpass those of non-high school graduates. In the Army, 18% of female high school diploma graduates leave the service during their first term of enlistment, as opposed to 25% of female non-high school graduates and 33% of female GED holders.

Another measure of an individual's value to the Army is retention beyond the first term. Retention rates are affected by both the first-term attrition rate and the propensity to reenlist. Because GED holders are significantly less likely to complete a first term, there are fewer who are eligible to reenlist. Although the differences are less pronounced, high school graduates elect additional terms of service more often than GED holders and non-high school graduates. On the average, the General states, 33% of the high school graduates reenlist, compared to 30% of GED holders and non-high school graduates.

In light of the aforementioned, the General states that it is desirable to have as many high school graduate accessions as possible. It is not possible, however, to obtain enough male recruits who are high school graduates to fill all of the Army's requirements for males. Thus, the Army has decided to permit a limited number of males with only a GED to enlist. Eighty-nine percent (89%) of the male accessions for fiscal year 1986 were high school diploma graduates. On the other hand, it has been possible for the Army to obtain enough women accessions who are high school graduates, without using women who only possess a GED.

As the nonmoving party, Ms. Lewis may oppose the government's motion with any of the kinds of evidentiary materials listed in Fed.R.Civ.P. 56(c), "except the mere pleadings themselves...." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2554. As the Third Circuit has stated, "[A]llowing a nonmoving party opposing a motion for summary judgment to rest on mere denials where there are unidentified facts of record which may contradict the facts identified by the movant would be an unworkable and illogical rule. It would require the district judge to search through an often voluminous written record for facts which might support the nonmovant's claim and require [the court of appeals] to review the district judge's search to insure that no facts were missed." *Childers v. Joseph*, 842 F.2d 689, 695 (3d Cir.1988).

By way of response, Ms. Lewis filed an answer and a supplement to her answer to the government's motion. The main issue discussed in Ms. Lewis' responses to the motion is the appropriate standard of review for this case. This is a legal issue, however, and presents no genuine issue of material fact. Ms. Lewis also challenges the validity of various empirical studies used by the Army to support its preference

for HSDGs over non–HSDGS and GED holders. She asserts, *inter alia,* that the studies "may be erroneous or misleading," and that certain data "may affect the reliability" of the studies.

Although Ms. Lewis argues that the studies are unreliable, she has presented no evidence supporting this claim beyond mere assertions contained in her responses to the government's motion. Despite the Supreme Court's teachings in *Celotex* and the express language of Fed.R.Civ.P. 56(e), her answers do not include affidavits, depositions, answers to interrogatories, or admissions on file. Instead, she has chosen to rest solely upon mere allegations on denials of the facts asserted by the Army through its affidavits. Although this court has reviewed the studies and her claims about them, Ms. Lewis has failed to provide the court with, for example, evidence from someone qualified to analyze and dispute or otherwise challenge the conclusions drawn by the Army with regard to the studies. As stated previously, the mere assertions of counsel simply do not suffice in countering a summary judgment motion. *Childers v. Joseph,* 842 F.2d 689, 695 (3d Cir. 1988); *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). By offering only the assertions of counsel, without concrete support for them, Ms. Lewis has failed to satisfy her burden to withstand the government's motion for summary judgment.

In determining whether the challenged enlistment policy is constitutional, several Supreme Court cases provide guidance. In *Rostker v. Golberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), the Court found no equal protection violation in the requirement that men, but not women, register for the draft. At the outset, the Court noted "the operation of a healthy deference to legislative and executive judgment in the area of military affairs" by the Court. *Id.* at 66, 101 S.Ct. at 2652. The court observed that in deciding to exclude women from the draft, Congress had given careful consideration to the matter and had decided that registration of women was unnecessary given the policy precluding the use of women in combat. Because of the combat restrictions on women, the Court concluded that men and women are not similarly situated for purposes of registration or the draft. Therefore, the court stated, Congress' decision to register men only did not violate the due process clause, and the exemption of women was not only sufficient but closely related to Congress' purpose in authorizing registration. *Id.* at 78–79, 101 S.Ct. at 2658–2659.

Similarly, in *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975), a due process challenge was made to a Navy policy that allowed females a longer period than males in which to attain promotions necessary for continued service in the military. As in *Rostker,* the basis for the challenged policy was the combat exclusion policy pertaining to women. Distinguishing earlier cases in which challenged classifications based on sex were based on "overbroad generalizations," *Schlesinger,* 419 U.S. at 507, 95 S.Ct. at 577 (citations omitted), the court found the differing treatment of male and female officers in *Schlesinger* completely rational and reflective of the fact that the two sexes were not similarly situated with respect to opportunity for professional service in the Navy. *Id.* at 507–09, 95 S.Ct. at 577–78.

In addition to *Rostker* and *Schlesinger,* defendants also cite as controlling *Chandler v. Callaway,* No. C–74–1249 (N.D.Cal. Nov. 4, 1974). *Chandler* was very similar to the instant case and involved a challenge to an Army enlistment policy that required female enlistees to have a HSD or GED and be at least age eighteen, whereas males (at that time) could enlist at age seventeen and did not have to be HSDG or GED holders. Once again, the basis for the distinction was the policy excluding women from combat. In granting summary judgment for the Army, the court found the distinction both "reasonable and lawful," concluding that admission standards could be set higher for women than men since the Army's need for women enlistees was so much lesser.

I find *Rostker v. Goldberg* and *Schlesinger v. Ballard* controlling. Both of those

cases involved due process and equal protection challenges to military policies that treated men and women differently. The basis for both policies was the combat exclusion policy. In upholding the military policies in both instances, the Court stated that because of the combat exclusion policy, men and women were not similarly situated and thus could be treated differently without violating due process or equal protection. *Rostker*, 453 U.S. at 78, 101 S.Ct. at 2658; *Schlesinger*, 419 U.S. at 508, 95 S.Ct. at 577.

In the case before me, the Army has adopted an enlistment policy that uses different criteria for men and women. An important, if not primary, goal of the Army's enlistment program is the recruitment of adequate numbers of the highest quality soldiers into the Army. Through its pleadings and affidavits attached to its motion for summary judgment, the government stated the Army's preference for HSDGs because they have lower attrition rates and higher retention rates than non-HSDGs. In her affidavit, General Williamson indicated that attrition and retention rates are of concern to the Army "because the cost of selecting, classifying, training and equipping new recruits is especially high." Defendants' Memorandum, App. A at 4. In addition to financial concerns, attrition and retention rates obviously affect military readiness.

Because women are excluded from combat positions, more men than women are needed in the Army. To obtain a sufficient number of men, the Army permits a limited number of non–HSDGs to enlist; this is done only so the Army can obtain the requisite number of male enlistees. Enough female HSDGs can be recruited to fulfill the Army's needs, however, so women enlistees are required to be HSDGs.

As in *Rostker* and *Schlesinger*, I find that men and women are not similarly situated for purposes of military service as a result of the combat exclusion policy. As a result of the combat exclusion policy, the Army requires approximately one-tenth the number of women as it does men. Clearly, the wide disparity in these personnel requirements alone, without considering any specific criteria, greatly affects any individual woman's chance of being accepted for enlistment. Because the Army needs so many fewer women than men, it has chosen to set higher enlistment standards for women. Given these differing personnel requirements, I do not believe it unreasonable for the Army to set higher enlistment standards for women.

In deciding the matter before me, I am mindful of the Third Circuit's advisory regarding the general "lack of competence on the part of the courts in regulating military affairs," and that when reviewing military affairs, judicial intervention "should only be undertaken with care and circumspection." *Jaffee v. United States*, 663 F.2d 1226, 1237–38 (3d Cir.1981). Based on the evidence submitted by the government with its motion for summary judgment and mindful of the deference accorded the military by the courts, I cannot conclude that the Army's policy barring women but not men who possess only a GED certificate is not reasonably relevant and necessary to the national defense.[7] As a result, I find no due process or equal protection violation in the challenged enlistment policy, either on its face or in its application to Ms. Lewis.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of September, 1988, upon consideration of the motion of the Secretary of Defense of the United States and the United States of America and Plaintiff's response thereto, it is hereby Ordered that Summary Judgment is

---

**7.** As indicated *supra* note 5, I have concluded that this is the appropriate standard of review for gender-based equal protection claims raised in the context of military affairs. However, even if the standard should be that used in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), I would conclude that the challenged enlistment policy serves and is substantially and closely related to the achievement of the important governmental objective of recruiting adequate numbers of the highest quality soldiers into the Army and insuring military readiness.

GRANTED in favor of all remaining defendants and against Plaintiff, and the Complaint is DISMISSED.

AND IT IS SO ORDERED.